## LeCONTE v. IRWIN.

1. An order vacating a judgment by default, under section 195 of the code, is within the discretion of the Circuit judge, and there is no appeal to this court, unless he commit some error of law.
2. In an action for foreclosure, a judgment by default was rendered and sale ordered, which was made, the property being bid off by plaintiff's attorney, who transferred his bid to a stranger, and such stranger complied and received titles. Afterwards, motion was made by defendant to open the default upon the ground of excusable neglect, and the motion was granted and the sale and title-deed annulled. *Held* that the Circuit judge erred in directing the sale and deed to be set asde.
3. Plaintiff's attorney may be a *bona fide* bidder at a judicial sale, and the defendant has no ground of complaint if such attorney become the purchaser.

Before HUDSON, J., Richland, April, 1883.

Action by Harriet LeConte against Margaret Irwin. The opinion states the case.

In granting the motion, Judge Hudson said:

This case came on to be heard before me upon a report of sale by the master and a motion to confirm the same, and upon a motion by the defendant to set aside the judgment and vacate all proceedings thereunder. The last motion was supported by affidavits, and counter-affidavits were read in opposition thereto. * * *

It is in the discretion of the Circuit judge, upon such a motion as this, to vacate a judgment obtained against a party by his mistake, inadvertence, surprise or excusable neglect. The only ground upon which I can vacate this judgment is that

of excusable neglect, and the irregular, if not illegal, mode of entering and enforcing the judgment for money and foreclosure and sale. This operated as a surprise and hardship upon the mortgagor, entitling her to ask relief.

If it would result in irreparable injury to the purchaser at the sale, I would not disturb vested rights under the decree, or set aside the sale; but this property having been bid in by the plaintiff's attorney, which is the same thing as the plaintiff himself, and William H. Monckton, being the assignee of the plaintiff's bid, steps into the plaintiff's shoes, and can be fully protected by subrogating him to the plaintiff's rights under the bond and mortgage for the amount paid by him, together with the expenses in connection with the transaction and the examination of the title, and interest thereon.

It is therefore ordered that the decree in said cause, and the sale made thereunder by the master of the premises set forth in the complaint, be and the same are hereby vacated, set aside and annulled, and that the defendant, Margaret Irwin, have leave to file an answer to the complaint herein within twenty days from the date of this order. * * *

*Mr. W. H. Lyles,* for appellant, cited 7 *S. C.* 76; 10 *Id.* 268; 16 *Id.* 362; 18 *Id.* 602; 7 *Id.* 381; 16 *Id.* 504, 282; *Ror. Jud. Sale,* §§ 138, 139; *Rich. Eq. Cas.* 228.

*Mr. R. A. Lynch,* contra, relied on *Truett* v. *Rains,* 17 *S. C.* 451.

July 31st, 1883. The opinion of the court was delivered by

Mr. Justice McGowan. The plaintiff held a bond of the defendant, secured by mortgage of a house and lot, for $849, with interest from date, October 7th, 1880, (with the privilege of paying twenty dollars per month until the whole should be paid,) payable in four equal annual installments. Neither the bond nor the mortgage contained a stipulation that in default of payment of one installment the whole was to become due. So that $212.25, besides interest, became due on October 7th, 1881, and a like sum on the same days in 1882, 1883 and 1884.

On October 13th, 1881, the plaintiff instituted proceedings to

foreclose the mortgage. The defendant was served with summons, but made no defense. The case was referred to the master, and on July 25th, 1882, he filed his report, stating correctly that there was due the first installment and interest, $319.17, and the further sum of $636.75 was not due, whereupon Judge Witherspoon, July 28th, 1882, ordered that the defendant, Margaret Irwin, should, on or before the 1st day of September, 1882, pay to the plaintiff the whole bond, $955.92, and in default thereof the house and lot should be sold. Under this judgment, the master, N. B. Barnwell, Esq., offered the house and lot for sale on sales-day in November, 1882, and it was bid off by Mr. Marshall, plaintiff's attorney, for $750, and the bid was entered to " J. Q. Marshall, attorney." The bid was afterwards transferred by J. Q. Marshall to W. H. Monckton, and on February 7th, 1883, John T. Seibles, Esq., master of Richland county, and successor of N. B. Barnwell, Esq., who had made the sale, executed and delivered to W. H. Monckton a deed for the premises, he having complied with terms of sale.

On February 8th, 1883, the day after the titles were executed as above stated, the defendant, Mrs. Irwin, through Mr. Lynch, her attorney, gave notice of a motion to set aside the judgment and all proceedings thereunder, upon two grounds : " First, that if certain money paid by the defendant to the plaintiff or her agents had been properly credited upon said bond, no right of action would have accrued to the plaintiff; and, second, for surprise, in this, that the defendant was not aware, until judgment had been obtained against her, that the payments referred to had not been credited upon the bond, and for such other relief as may be just, &c." Judge Hudson heard the matter upon affidavits in connection with the master's report on the sale, and granted an order setting aside the judgment, on the ground of "excusable neglect," on the part of the defendant, Mrs. Irwin, when the judgment and the order of sale were entered against her, and gave her permission to answer. He also set aside the sale made under that decree, and the title executed to Monckton, who had been served with notice of the proceedings.

From this order both Mrs. Le Conte and Monckton appeal

to this court upon the following exceptions: "1. Because his Honor refused the motion of plaintiff to confirm the master's report of sale. 2. Because his Honor considered as evidence of the value of the property, the statements of defendant's counsel in argument. 3. Because his Honor concluded that there was error in the decree of Hon. I. D. Witherspoon, Circuit judge, filed in said case. 4. Because his Honor vacated the decree and the judgment in said cause upon the ground of error therein. 5. Because his Honor decreed that the sale to W. H. Monckton should be set aside and annulled, and that the deed executed by the master to said Monckton should be delivered up to be canceled."

Section 195 of the code, among other things, provides that "The court may, in its discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, order or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect, and may supply an omission in any proceeding," &c. An application for relief under this provision is addressed to the discretion of the Circuit judge, and, unless he commit some error of law, there is practically no appeal to this court. If the application is decided entirely upon the facts submitted, this court is shut out from reviewing them by the limit to its jurisdiction. *Gibbes* v. *Elliott,* 8 *S. C.* 63. If the "discretion" given to the Circuit judge is not to be considered as "a mental discretion to be exercised *ex gratia,* but a legal discretion to be exercised in conformity to law," still, the provision allowing the relief is remedial in its character, and this court will not undertake to reverse an order vacating a judgment rendered by default, except in cases of "gross abuse of the discretion of the court." *Freem. Judg.,* § 106. It is true, the application in this case was greatly delayed, and confusion has resulted therefrom, but it was made within the year allowed, and was granted by the Circuit judge. The showing upon which it was granted is not before us, and we cannot say that the judge abused the discretion allowed him in setting aside the judgment and giving the defendant an opportunity to be heard. To that extent, the order must stand.

But the more difficult question still remains—whether it was error on the part of the judge to set aside the sale made under the judgment, and the titles executed by the master to Monckton. The decree by default for the sale of the house and lot, regular in form, but excessive in the amount of money required to be paid, was entered July 28th, 1882. The house and lot were sold in November, after titles were executed to Monckton on February 7th, 1883, and the day after (February 8th, 1883,) the proceeding was instituted which resulted in setting aside the judgment as above stated. Under these circumstances was it error in the judge, upon a mere motion, to set aside the sale and titles made to Monckton by the officer of the court, before the regularity of the order of sale or judgment was assailed? If Monckton himself had been the purchaser at the master's sale, we suppose there could be little doubt upon the subject. There are some cases to the contrary, but we believe it settled by the great preponderance of authority, that property acquired by a *bona fide* purchaser at a judicial sale under orders regular in form and voidable only, shall not be affected by a future reversal or vacation of the judgment.

We cannot state the principle in clearer terms than those employed by Mr. Freeman: "Courts have always construed the law so as to impart confidence to judicial sales by protecting purchasers thereat from those ill consequences which the latter might suffer if the title acquired by them depended upon the freedom of prior proceedings from all errors of law. It was thought to be unjust to require purchasers to suffer for errors committed by the judges of the subordinate courts, and impolitic by making such a requirement to discourage bidders at such sales, and thereby to expose large amounts of property to the hazard of being sacrificed at nominal prices. Therefore, it is a rule nowhere disputed, that third persons purchasing at a sale made under the authority of a judgment or decree, not suspended by any stay of proceedings, thereby acquire rights which no subsequent reversal of such judgment or decree can in any respect impair." *Freem. Judg.*, § 484 and *notes*.

But conceding this, it is urged that in this case Monckton is not a *bona fide* purchaser; that he only took the bid of Marshall,

who bid off the property " as attorney for Mrs. LeConte," the plaintiff, and the matter must be considered precisely as if she, Mrs. LeConte, were making the question. It does not strike us in that way. If Mrs. LeConte had purchased the property, and were now before the court defending her title to it, probably it might be opposed that she was not a *bona fide* purchaser for the reason that she paid for it with her own judgment, which had been set aside; but that cannot be said as to Marshall or Monckton. The ground on which the judgment was opened was not the error in the amount to be paid, of which the attorney of plaintiff might be supposed to be cognizant, but that it was taken by default under circumstances which authorized the court afterwards to open it. The application for that purpose was not made until after the sale, transfer and execution of titles to Monckton. Up to that time, the secret vice in the judgment had not appeared, and was as entirely unknown to the attorney of the plaintiff as to a stranger.

We do not see why the attorney of the plaintiff, after judgment rendered and entered, may not be a *bona fide* bidder at a judicial sale fairly conducted, as well as any other person. He has no duty to perform that is inconsistent with the character of purchaser. The law looks with jealousy upon contracts between an attorney and his client to the disadvantage of the latter, but here there was no contract with the client. *Miles* v. *Ervin,* 1 *McC. Ch.* 524. The complaint is not made by the client plaintiff, but by the defendant. The interests of defendants in general require that everybody may bid. If the plaintiff's attorney is forbidden to bid, the defendant is thereby injured by the decrease in competition. If an attorney complies with his bid, or procures another to do it by payment out of his own funds, on what grounds is it less a *bona fide* bid than if made by some other person? He stands in a position different from that of a party to the suit, and in a similar position to that of a third person purchasing, and ought to be subject to none of the perils of the former, but entitled to all the rights of the latter. *Freem. Judg.,* § 484.

It may be matter of regret that, when Mrs. Irwin was sued, she did not present her case to the court, or, having failed to do

so, that she did not seek relief sooner. But it was delayed until after the legal title had been conveyed to Monckton, and the court is always reluctant to disturb vested rights, especially in summary proceedings by mere motion. *Orr* v. *Orr*, 7 *S. C.* 381.

The judgment of this court is, that so much of the judgment of the Circuit Court as set aside and ordered to be canceled the conveyance of the master, Seibles, to William H. Monckton, bearing date February 7th, 1883, be reversed.